## THE ROCKAWAY.

## THE RICHARD F. YOUNG.

(Circuit Court of Appeals, Fourth Circuit.   October 9, 1917.)

No. 1534.

COLLISION ⬥153—SUIT FOR COLLISION—REVIEW ON APPEAL—FINDINGS OF
FACT.

    Where the question of responsibility for a collision is a doubtful question of fact, and the finding of the trial court is supported by substantial evidence, it will not be disturbed on appeal.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by Bannie Barnes against the ferryboat Rockaway, the Ferries Company, claimant, and the tug Richard F. Young, Henry Crew, claimant.   Decree for libelant against both vessels, and claimants appeal.   Affirmed.

For opinion below, see 240 Fed. 844.

Braden Vandeventer, of Norfolk, Va. (Hughes & Vandeventer, of Norfolk, Va., and Foley & Martin, of New York City, on briefs), for appellant Henry Crew, owner and claimant of tug Richard F. Young.

R. Randolph Hicks, of Norfolk, Va., for appellant Ferries Co., owner and claimant of ferryboat Rockaway.

D. Lawrence Groner, of Norfolk, Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge.   The appellee, Bannie Barnes, a passenger on the ferryboat Rockaway, plying between Norfolk and Portsmouth, was injured in a collision between the ferryboat and the steam tug Richard F. Young, which occurred just after the former started from her Norfolk slip.   Prior to the accident the tug had been lying, bow upstream, at Campbell's Wharf, which nearly adjoins the ferry slip, with another tug and a carfloat between her and the wharf.   To permit the carfloat to be taken elsewhere, the Young moved out into and up the stream a short distance, and then turned about to go back to the wharf when the carfloat was out of the way.   This maneuver took place almost in front of the ferry slip and for a couple of minutes or so prevented the Rockaway from leaving.   But when the tug began to move downstream and her stern was passing the end of the lower line of piling, the Rockaway gave the usual signal and started out on her trip.   She had gone only some 200 feet, her stern clearing the mouth of the slip by about 50 feet, when she hit, or was hit by, the fantail of the tug, causing the injury in question.   The court below found both vessels at fault and decreed that each of them should pay half the damages awarded.   Both appealed.   Each concedes that appellee is entitled

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to recover, because the accident was not unavoidable, but each seeks to escape liability by making out that the other was wholly to blame.

As here presented the case turns mainly on the position and movements of the tug immediately before and at the moment of the collision. The Rockaway contends that she did not start until the tug was clear of her course, that she moved "straight out" from the slip, as was right and proper for her to do, and that she had gone but little more than her own length, not having gained sufficient speed for steerageway, when the tug without the slightest warning suddenly began backing at full speed, and kept backing until they collided, although she twice blew danger signals and did everything else in her power to avert the accident. Indeed, the alleged backing of the tug into the pathway of the ferryboat, when the latter could not reasonably foresee or guard against such a movement, is the principal ground upon which the Rockaway claims exemption.

Against this is the testimony of witnesses for the Young, equally positive and, so far as we can see, equally believable, to the effect that the tug did not back at all after she started downstream; that she reversed her engines just enough to check her speed and bring her practically to a standstill; that she did this to avoid running down a couple of launches which were crossing her bow, one going to and the other from a landing at Campbell's Wharf; that the pilot of the ferryboat could and should have perceived the difficult situation of the tug and taken it into account before leaving the slip; that the stern of the tug was some 25 feet below the lower line of piling when the accident happened; that the Rockaway either went to starboard or was carried down by the tide and struck the tug when the latter was compelled to stop; and that consequently the Rockaway was wholly at fault.

This outline of opposing contentions is quite sufficient, as we think, to show that the question of responsibility for the collision, as between the ferryboat and the tug, was a doubtful question of fact, and that the finding of the learned district judge is supported by substantial and not improbable proof. This being so, the finding will not be disturbed, as we have repeatedly held, and the decree is, accordingly, affirmed.